HARRIET C. OSBORN, adm'x of G. K. Osborn, *vs.* BELL.

Where property has been wrongfully taken and converted into money, the owner may, generally, waive the tort, and bring his action for the money received by the wrongdoer. *Per* BEARDSLEY, C. J.

That action may always be brought where the party who took the property was acting for his own benefit. *Per* BEARDSLEY, C. J.

But where the taking was by a public officer in the supposed performance of his official duty, it must appear, in order to sustain the action for money had and received, that the officer had notice of the plaintiff's claim before paying over the money according to the process by which it was levied. *Semble. Per* BEARDSLEY, C. J.

Whether assumpsit as for *goods sold* can be sustained against one who has wrongfully taken the plaintiff's goods for his own benefit, but has not sold or converted them into money. *Quere. Per* BEARDSLEY, C. J.

But *held* that such an action cannot be sustained against a public officer, for taking and selling the personal property of the plaintiff, in good faith under color of lawful authority.

Accordingly where the defendant, a collector of taxes, seized and sold the property of the plaintiff for a tax against another person, for which the property was supposed to be liable, but it did not appear whether the defendant had actually received the money on the sale; and the plaintiff brought *assumpsit* for goods sold and money had and received, *held* that he could not recover.

The liability of the representatives of a deceased person, for the torts of their testator or intestate which were beneficial to his estate, by a waiver of the tort, considered, and the authorities referred to. *Per* BEARDSLEY, C. J.

Assumpsit will not lie without a promise express or implied. *Per* BEARDSLEY, C. J.

A promise will not be implied unless it appear either that the defendant intended it should be, or that natural justice requires it in consequence of some benefit received by him. *Per* BEARDSLEY, C. J.

What a witness has sworn to in a former suit is competent evidence in a subsequent suit, between the same parties, or between parties litigating the same interests, where the point in issue is the same in both suits.

ASSUMPSIT, tried at the Rensselaer circuit in November, 1844, before PARKER, Cir. J.   The suit was originally commenced in January, 1843, by the plaintiff's intestate, but he dying after issue joined, the present plaintiff was appointed his administratrix, and by an order of the court was substituted as plaintiff.   The declaration contained the general counts in *indebitatus assumpsit* for goods sold, and money had and re-

Osborn *v.* Bell.

ceived. Plea, *non-assumpsit.* The plaintiff claimed to recover for certain factory machinery, namely, *a lathe* and two *bat carders.*

The facts appearing upon the trial, which are material to be stated, are the following: The defendant was a collector of taxes for the third district of the city of Troy, and in that character had in his hands the assessment roll, tax list and warrant for the collection of the county taxes, in that district, issued in December, 1839, and an assessment roll, list and warrant for the city taxes for the same district, for the same year. On each of these lists, George B. Warren was assessed in a sum of money, in the aggregate amounting to about sixty dollars, on a cotton factory situated in that district. Upon these warrants the defendant, in the spring of 1840, seized and sold the machinery in question to pay the taxes aforesaid assessed on the factory. The plaintiff gave evidence to show that the property when so sold belonged to the intestate. Evidence was also given to show to whom the factory belonged at different periods. In the course of the trial, the defendant's counsel offered to prove what one Laban Tucker, then deceased, had sworn to on a former trial, between the intestate and the present defendant, in trover brought by the intestate for the property in question in this suit. The plaintiff's counsel objected to the evidence, and the judge sustained the objection and the testimony was excluded. The defendant's counsel excepted.

The judge charged the jury that the collector's warrants did not justify the taking of the property of the intestate for the tax on the factory; that no other property than that of Warren could be taken for that tax; that the warrants were therefore no protection to the defendant, and that the action of assumpsit for goods sold was well brought in this case, and the rule of damages was the value of the property and not merely what it sold for. The defendant's counsel excepted. Verdict for the plaintiff. The defendant moves to set aside the verdict on a bill of exceptions.

*D. Buel, Jr.* for the defendant.

*G. Stow,* for the plaintiff.

*By the Court,* BEARDSLEY, Ch. J. Assuming that the lathe and bat carders, when levied on by the defendant, were the property of G. K. Osborn, an action of trespass, if the taking was tortious, would have been an appropriate remedy for him while living, and after his decease a similar action might have been brought by the plaintiff as administratrix. The last proposition was not true at common law, the maxim being *actio personalis moritur cum persona;* (1 *Ch. Pl.* 78, 9, *ed.* 1837; *Broom's Legal Max.* 400;) but the statute is explicit that trespass may, in such case, be brought by the personal representative. (2 *R. S.* 114, § 4.) The present, however, is not an action of trespass but assumpsit, and if that remedy existed in favor of the intestate there can be no doubt it survived to the present plaintiff as administratrix.

The declaration contained general counts for goods sold and money had and received, and it appeared on the trial that the defendant, who was a collector of taxes, had seized and sold the property in question to satisfy certain taxes which it was his duty to collect. It was not shown that the defendant received any money on the sale; nor was the right to maintain this action placed on the ground that the plaintiff might waive the tort and bring assumpsit for the money thus received by the defendant. The general rule, where property has been wrongfully taken and converted into money, certainly is, that the owner of the property may waive the tort and bring his action directly for the money received by the wrongdoer, and the case of *Young* v. *Marshall,* (8 *Bing.* 43,) is a strong authority for the position that this may be done, under some circumstances, where the property was taken and sold by a public officer in the supposed performance of his duty, the money having been paid to and received by him in that character and capacity. It is not unlikely that the money bid on the sale of this property was paid to the defendant as collector, and, in that event,

he also, probably, paid over the whole or some part thereof in satisfaction of the tax for which the sale had been made. If this action had been brought for the money so received by the defendant, as collector, the fact that he had notice, before the money was paid over, of the claim of the intestate to the property sold, might have been indispensable in order to show a right of action for the money. But in all these respects this bill of exceptions is deficient : it does not show that the defendant received or paid over any money, or that he ever heard of the claim of the intestate, until this action was brought. The case then, so far as respects a right to recover for money had and received, is but partially presented, and that question not being formally made on the trial, will be dismissed without the expression of any opinion upon it.

The judge charged " that the action for goods sold was well brought in this case," to which an exception was taken by the defendant, and this presents the point to be considered.

There was no pretence on the trial or the argument, that the defendant ever, in fact, made a purchase of these goods, or expressly agreed to pay for them. He was a collector of taxes, and as such seized and sold the goods to satisfy a tax in his hands for collection. As to the intestate, what was done may have been wrongful, but there was nothing like a purchase, in fact, of the goods by the defendant. He was not acting in a personal and private capacity, but as a public officer ; and although what he did may have been, as to the intestate, wholly unauthorized, it was done for the public and not for the benefit and advantage of the defendant. The question then arises, can a person, whose goods are wrongfully taken by a public officer, acting as such and not for his own benefit, waive the tort and maintain assumpsit for goods sold?

It is entirely settled that where goods are wrongfully taken and converted into money by a person *acting for his own benefit,* the owner may waive the tort and bring assumpsit for the money thus received by the wrongdoer. (*Chit. on Cont.* 607, 23 24, *ed.* 1842 ; 1 *Arch. N. P.* 3 ; 1 *Hill,* 240, *note ;* 3 *id.* 283,

*note ; 5 id. 584, note, and the authorities referred to in these books.*)

There are also respectable authorities for the position that where goods have thus been taken, but not turned into money, the owner may waive the tort, and recover as for goods sold. (*Hill* v. *Davis,* 3 *N. H.* 384, *and the books last above referred to.*) But upon this point the authorities are not agreed, some holding that the tort can only be waived where the property has been sold and converted into money by the wrongdoer, in which case the owner may affirm the sale and sue for the money as had and received to his use. (*Jones* v. *Hoar,* 5 *Pick.* 285 ; *Willet*·v. *Willet,* 3 *Watts,* 277 ; *Bennett* v. *Francis,* 2 *B. & P.* 554; *see also the books above referred to.*) It is unnecessary in this case to say how that point should be determined, and no opinion is intended to be expressed upon it. If an action for goods sold will lie in any case, for a mere tortious taking, the goods not having been turned into money by the wrongdoer, it must be because the law will, in such case, imply a promise to pay for them ; for assumpsit can only be maintained upon a promise, express or implied. Where the goods have been applied to the use of the wrongdoer, it may not be unreasonable, and certainly not unjust, to imply a promise to pay for them, without regard to the manner in which the goods were originally acquired. The wrongdoer is responsible in some form of action for their value, and he cannot be prejudiced by holding him as a purchaser and not a trespasser. In such case if the wrongdoer die before satisfaction made or a recovery had for the trespass, his personal representatives, although not answerable in tort for his wrongful acts, are still liable to the party injured for the value of the property. To this extent the property of the wrongdoer is, in such case, augmented by the wrong done ; and, although the right to bring an action of trespass dies with the person of the trespasser, his representatives are, in such case, held liable in assumpsit for the value of the property, on the principle that the estate which received the benefit should, so far, repair the injury. (*Hamhly* v. *Trott Cowp.* 372 ; *Cravath* v. *Plympton,* 13 *Mass.* 454 ; *Wilbout* v

*Gilmore*, 21 *Pick.* 252 ; *Powell* v. *Reese*, 7 *A. & E.* 426 ; *Foster* v. *Stewart.* 3 *M. & S.* 191.) And it is upon this principle alone, as it seems to me, that a promise to pay for goods tortiously taken, can, in any case, be implied. It is clearly so where the action is brought against the personal representatives of a wrongdoer. In *Powell* v. *Reese*, just cited, Lord Denman said : "In the case of *Hambley* v. *Trott*, (1 *Cowp.* 372,) Lord Mansfield very fully considers this subject, and lays down the distinctions which arise as to the surviving of remedies, upon the cause of action, and the form of action. He observes, that there is 'a fundamental distinction.' If it be a sort of injury by which the offender acquires no gain to himself at the expense of the sufferer, as beating or imprisoning a man, &c. there the person injured has only a reparation for the delictum in damages to be assessed by a jury. But where, besides the crime, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor. As for instance, the executor shall not be chargeable for the injury done by his testator in cutting down another man's trees, but for the benefit arising to the testator for the value or sale of the trees he shall."

In *Cravath* v. *Plympton*, (*supra*,) Putman, J. in delivering the opinion of the court, said, "The principles adopted seem to be that where the deceased, by a tortious act, acquired the property of the plaintiff, as by cutting his trees and converting them to his own use, or by converting his goods to his own use ; although no action of trover or trespass will lie ; yet the law will give the plaintiff some form of action, to recover the property thus tortiously obtained. But where by the act complained of, the deceased acquired no gain, although the plaintiff may have suffered great loss ; there the rule, *actio personalis moritur cum persona*, applies." So too, in *Wilbur* v. *Gilmore*, (*supra*,) Maston, J. said, "whenever the property taken by the testator or intestate was converted to his own use, so as to become a part of his assets, an action, in some form, would lie against his representative to recover the value of the property."

Now in the case before us, it is quite clear upon the evidence

in the bill of exceptions, that no action for this supposed injury would lie against the personal representatives of the defendant. Trespass would not, for it dies with the person; and assumpsit would not, for no property was acquired by the defendant. His estate has not been benefited by the trespass, if it was one, upon which ground alone, are the personal representatives ever held liable for the wrongful acts of a testator or intestate. As the personal representatives of the defendant would not be liable in this case, I think it clear that he cannot be charged in assumpsit for these goods as sold to him. There is no case, I will venture to say, in which an action for goods sold will lie against a party, where the action would not survive against his personal representatives. If this action can be maintained against the defendant, as for goods sold, it will follow that the personal representatives of every deceased sheriff, coroner or constable, who had wrongfully seized and sold property on execution, must be held liable to respond to the full value of such property, although the proceeds of the sale had been paid over to the creditor in the execution, and the property of the deceased officer had not received a farthing's benefit from the tortious act. This would confound well known and well settled distinctions in this branch of the law, and for aught I see, we might as well hold that trespass lies against executors or administrators, for acts done by their testators or intestates, as to hold that this action for goods sold can be maintained against the defendant. If a promise to pay for the goods was made in fact, or is implied by law, then undoubtedly, his representatives may be sued on such promise. No express promise was pretended in this case; and as the personal representatives of the defendant could not be held liable on any thing shown in this bill of exceptions, it may, I think, be safely held, that there is no ground on which the law can imply a promise to pay for the goods.

An action for money had and received is said to resemble a bill in equity, and to lie whenever money has been received by one person which in justice and equity belongs to another. In every such case an agreement to pay over the money thus received, is implied by the law. (2 *Stark. Ev.* 82, *ed. of* 1842·

*Jestons* v. *Brooke, Cowp.* 795; *Foster* v. *Stewart, supra, Browne on Actions at Law,* 515, 518.) But this principle is not applicable in its full extent, to an action for goods sold, as the law does not imply an agreement to pay for all goods of which a party may become possessed. "It is a principle well settled," says Chief Justice Mellen, (5 *Greenl.* 322,) "that a promise is not implied against or without the consent of the person attempted to be charged by it. (*Whiting* v. *Sullivan,* 7 *Mass.* 107.) And where one is implied it is because the party intended it should be, or because natural justice requires it, in consequence of some benefit received." It was not shown on the trial of this case that the defendant had received any benefit from the seizure and sale of the property in question. No express promise to pay for the goods was pretended, and every feature of the transaction repels the idea that the defendant intended to have one implied from what he did. He may have been a trespasser, but I see no ground on which he can be held liable for these goods as sold to him. If he can be, such an action is, in almost every imaginable case, a concurrent remedy with trover, replevin and trespass for personal property. It may be a concurrent remedy where the property has been appropriated by a wrongdoer to his own use, but unless that fact is shown, I think no case will be found in which it has been held that a promise to pay for the goods is implied by law. That was not shown on the trial of this cause, and therefore, as it seems to me, the judge erred in holding that the action for goods sold was well brought.

The offer to prove what Laban Tucker, deceased, had sworn to, as a witness on the trial of a former action of trover brought by the intestate, George K. Osborn, against the present defendant, for the property now in question, was improperly rejected. We cannot understand from what is stated in the bill of exceptions, that this evidence was rejected, as was urged on the argument, because the defendant had not laid a proper foundation for its admission by proving the pendency and nature of the former action, and the death of the witness Tucker. Take what appears in the bill of exceptions, and, fairly understood

it imports an offer to give full proof on these points; nor did the plaintiff object to the offered evidence on the ground that such preliminary proof had not been given. We must understand the defendant as offering to show what the former suit was, and the death of the witness Tucker, as well as to prove what his evidence was. It then would have appeared, according to this offer, that the point in issue in the former action, which was trover for the same property, was in substance the same as in this, the parties to the two suits being also, in point of interest, identical. A judgment in the first action, upon plain and well settled principles, would have been a bar to the second. (1 *Phil. Ev.* 333 ; *Hitchin* v. *Campbell,* 2 *Black. R.* 827.) It was, therefore, the common case for resorting to evidence of what had been sworn to by a deceased witness. (1 *Phil. Ev.* 230, 231.)

It was urged on the argument that the taxes which the defendant was required to collect, although nominally set down against George B. Warren, were really a charge upon, and should have been paid by the then owners of the cotton factory, and that the defendant had a right to levy and make the same out of any property in the possession of such owners. The terms on which these assessments were made are not shown by the bill of exceptions; there may have been a separate valuation and a separate tax for the factory, or it may have been named in the assessment rolls, but without a separate valuation or tax, being carried into a general mass of property owned by the same person. The point suggested is one of some delicacy and importance, if not of difficulty, and should not, as I think, be ventured upon without knowing precisely the terms and manner in which these assessments were made. This might have been shown by proper extracts from the warrants, and the rolls, annexed thereto, which were in the defendant's hands, and under which he assumed to act. But these are not furnished, and the point will not be considered.

There should be a new trial.

Ordered accordingly.