# Mcduffee v. Collins Brothers & Co.

*Action for Money had and Received.*

1. *Action for money had and received ; sufficiency of complaint ; joinder of actions.*—A count of the complaint which after claiming of the defendant a certain sum, then avers that the plaintiff was the owner of certain personal property which was subject to taxes assessed against a third party, that such property was levied upon and sold by the tax collector and that after paying the taxes due there was a surplus left from the proceeds of the sale, and that the defendant, as such tax collector, had notice of the plaintiff's title to the property so sold, but that he refused to give to the plaintiff the balance of the money held by him after paying the taxes, states a cause of action for money had and received, and is properly joined in the common count for money had and received.

2. *Mortgagee's right of .possession of mortgaged property.*—At law the mortgagee of chattels has the entire legal property, and the right of immediate possession, even before the law day of the mortgage, unless by express stipulation, or by reasonable inferences from express stipulations, the right of possession is reserved to the mortgagor.

3. *Mortgage of personal property ; right of mortgagee to surplus of proceeds from sale of mortgaged property for taxes.*—Where a mortgage of personal property expressly stipulates that the mortgagee should have the right to take the property into his possession whenever he deemed it necessary, either before or after the maturity of the debt, and a tax collector sells a part of the mortgaged property in payment of the mortgagor's taxes, the mortgagee, and not the mortgagor, is entitled to any balance of the proceeds of the sale remaining in the hands of the tax collector, after satisfying the taxes and the costs, even though the sale of the property was made before the maturity of the mortgaged debt.

4. *Same ; same ; liability of tax collector.*—In such a case, where both the mortgagor and the mortgagee claim the surplus remaining after the payment of the taxes and costs, and the tax collector paid it to the mortgagor instead of requiring the parties to interplead, such collector is liable to the mortgagee for the amount so paid to the mortgagor.

5. *Right of mortgagee to surplus of proceeds from sale of mortgaged property for taxes ; action for money had and received.*—Where a tax collector sells personal property, which is included in a mortgage, for the payment of the mortgagor's taxes, and pays to the mortgagor the surplus of the proceeds from the sale remaining in his hands after

the payment of the taxes and costs, although a demand was made therefor by the mortgagee, the mortgagee can maintain an action for money had and received against the tax collector, to recover the amount of the money so paid to the mortgagor.

6. *Same; same; error without injury in the admission of evidence.* In an action by a mortagagee against a tax collector to recover the surplus remaining in his hands of the proceeds arising from the sale of mortgaged property and the payment of taxes due by the mortgagor, when there is no evidence that any part of the mortgaged debt had been paid, the defendant is not prejudiced by the admission of incompetent evidence that there was a balance of a certain amount due on the mortgage; and the admission of such evidence is error without injury.

7. *Evidence; requiring production of books.*—It is not error for the trial court to deny an oral motion made by one of the parties to a suit for time to spread a motion upon the docket to require the other party to produce his account books, where it does not appear by the motion that any fact existed which the statute (Code of 1896, § 1859) provides as a basis for an order requiring the production of such books.

APPEAL from the Circuit Court of Geneva.

Tried before the Hon. J. W. FOSTER.

This action was brought by "J. S. Collins, H. B. Collins, M. F. Collins and B. E. Collins, partners doing business under the firm name of Collins Brothers & Co.," against the appellant, B. P. McDuffee.

The complaint contained two counts, which were as follows : 1. "The plaintiffs as partners claim of the defendant the sum of sixty and 30-100 dollars for that whereas on and prior to the 20th day of May, 1895, the plaintiffs as partners aforesaid was the owner of one bay horse mule about nine years old, that said mule was subject to and liable for the State and county taxes assessed against James Cannon for the year 1894; that the said B. P. McDuffee as tax collector of Geneva county, Ala., levied upon the said mule, and on the 20th day of May, 1895, sold said mule for the payment of the State and county taxes assessed against the said James Cannon for the year 1894, which with the fees and costs thereon amounted to four and 70-100 dollars ; that said B. P. McDuffee sold said mule at and received therefor the sum of sixty-five dollars, and plaintiffs aver that at the time of said sale the said B. P. McDuffee had notice of plaintiffs' title to said mule ; and plaintiffs aver that before the bringing of this suit they demanded

of the said B. P. McDuffee the balance of the money received by him for said mule after paying the State and county taxes assessed against the said James Cannon for the year 1894, and the fees and costs thereon, and the said defendant has failed and refused to pay said money over to the plaintiffs, although often requested to do so, and therefore plaintiffs sue and claim sixty and 30-100 dollars with the interest thereon.''

2. ''The plaintiffs as aforesaid claim of the defendant sixty and 30-100 dollars for money, to-wit, 20th day of May, 1895, received by the defendant to the use of plaintiffs as aforesaid, which sum of money with the interest thereon is due and unpaid and is the property of plaintiffs.''

To this complaint, the defendant demurred upon the grounds that there was a misjoinder of counts, in that ''The first count is in case and the other for money had and received.'' This demurrer was overruled, and the defendant duly excepted. The cause was tried on the plea of the general issue.

John Collins, one of the members of the plaintiffs' firm, testified as a witness that the note, which was secured by the mortgage given by James Cannon to his firm, had not been paid, and that there was still a balance of over one hundred dollars due on said note. The defendant then asked the witness how he knew there was a balance due or how he knew there was anything due on said mortgage? to which he replied that he knew by the entries on the books, and that he knew this just like anything else that he knew. He was then asked if he kept the books himself? to which he replied that he did not keep the books himself, although he might have made some of the entries on the books, but that he knew Cannon owed more than $100 on note and mortgage. He was then asked the question, if he testified from his own, independent knowledge, or from what he saw on the books as to the indebtedness of Cannon to plaintiff? to which he said that he testified from what he saw on the books. The witness also stated that he knew that Cannon owed more than $100 on the note and mortgage. The defendent then moved the court to exclude the testimony of the witness to the effect that there was a balance of $100 due on said mortgage, on the gounds that it is shown from the testimony of said witness that he

is testifying from, or bases his knowledge of said indebtedness upon, the entries made on the books, and it is shown that he did not make the entries, and that he has no personal knowledge of the indebtedness. The court overruled said motion, and defendant excepted. The defendant then moved the court to require the witness to produce his books in the court, showing the account between himself and the said Cannon, relative to said mortgage indebtedness. The court overruled said motion, and defendant excepted. The defendant then moved the court to suspend proceedings until the defendant could spread a motion upon the docket requiring the production of said books in the court. The court refused to suspend the trial so as to allow said motion to be made upon the docket, and to this ruling the defendant excepted. The other material facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiffs, gave to the jury the general affirmative charge in their behalf, and to the giving of this charge the defendant duly excepted.

There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

W. O. MULKEY, for appellant. The demurrer to the complaint for misjoinder of counts should have been sustained. The first count is unquestionably a count in case, and rests its claim for damages upon the supposed breach of the official duty of defendant in failing and refusing to turn over the money to the proper owner. 26 Amer. & Eng. Encyc. of Law, 704, and authorities cited in note 2 ; *Wilkinson v. Moseley*, 18 Ala. 288.

The court should have sustained the objection of defendant to the testimony of J. S. Collins as to the indebtedness from Cannon to his firm. The court also erred in failing and refusing to require the witness on the motion of defendant to produce his books in the court showing the account between his firm and Cannon.—Acts, 1894-95, p. 60.

It was plaintiffs' duty to protect this property by relieving it from the prior incumbrance, and failing to do this they can not hold the defendant responsible for the

surplus proceeds remaining in his hands after sale. *Draper v. Walker*, 98 Ala. 313 ; *Britt v. Pitts*, 111 Ala. 401.

P. N. HICKMAN, *contra*.—The plaintiffs were the owners of the mule, and were, therefore, entitled to recover in this action.—*Boswell v. Carlisle*, 70 Ala. 244 ; *Dunlap v. Steele*, 80 Ala. 424.

HEAD, J.—Both counts of the complaint are for money had and received. The first specially defines the money claimed ; the second generally. Otherwise, they are of the same legal effect. The demurrer was properly overruled.

One Cannon, owning a mule and other personal property, mortgaged the same to the plaintiffs to secure a debt greater in amount than the value of the mule. The State having a lien on the mule for Cannon's taxes, the tax collector lawfully seized and sold it for a sum which, after paying the taxes and costs, left a surplus in his hands of sixty odd dollars. Both Cannon, as the general owner, and the plaintiffs as mortgagees, claimed this surplus. The collector paid it to Cannon, and plaintiffs brought this suit against him to recover it. The mortgage debt did not mature until some months after the institution of the suit, but the mortgage expressly stipulated that the mortgagees should have the right to take the property into their possession whenever they might think it necessary to do so, either before or after the maturity of the debt.

We think it clear that the plaintiffs were entitled to the money. They were the legal owners of the mule with the right to its immediate possession, subject to the superior right of the tax collector to seize and sell for taxes. As against any one other than that officer, they could have maintained trespass or trover for any wrongful taking or conversion of the mule.—*Boswell v. Carlisle*, 70 Ala. 244, and authorities cited. The surplus proceeds in the hands of the tax collector represented the property ; the right of the mortgagees to the property, as against Cannon, at the time of the seizure and sale attached to the surplus and they were entitled, on demand, to receive it, as they would have been entitled to demand and receive the property itself had there been no conversion of it into money through the processes of a paramount lien.

We do not think section 541 of the Code, to which we are referred, is of controlling influence upon the question here presented. The provision therein that "any balance remaining shall be paid to the owner of the property," is merely declaratory of the law as it already existed. The gist of that section is the succeeding authority given to the collector to deposit the balance with the county treasurer or probate judge, if there be no treasurer, if the owner is not present at the sale, or being present refuses to receive it. The purpose was to relieve the collector of the duty of seeking the owner and paying him the balance, or of retaining it in his hands if the owner should refuse to receive it. It does not undertake to define what relation to the property a person must bear in order to be its "*owner*" within the terms of the section. That is left to be controlled by the general principles of law applicable to the case. If no superior claimant had made known his claim and demanded the money, the collector would have been authorized to pay the surplus to the tax payer from whom he obtained possession of the property, but a claimant appearing and asserting his right, the collector, like any other holder of funds to which there are known rival claimants, necessarily, if he paid to either, took upon himself the peril of seeing that the payment was made to the party lawfully entitled. This is the well known general rule of law, as applicable to ordinary citizens, and it applies alike to persons receiving money in their official characters.—24 Am. & Eng. Encyc. of Law, 962-3-4. Suppose the plaintiffs, instead of holding a mortgage on the mule, had held an absolute bill of sale from Cannon, transferring to them unconditionally the entire property and right of possession, and had upon notification of this title to the collector claimed of him the surplus, it is apparent, at a glance, that he could not have protected himself by paying to Cannon. The mortgage title was of the same effect, so far as the right to the surplus in this case was concerned.

Statutory and equitable interpleaders, where there are such disputes between rival claimants of money or property in the hands of an indifferent holder, as, under the statute or general rules of equity, those remedies are available, may be resorted to by the indifferent holder for his protection, and it can never be allowed that any

person, whether he be officer or private citizen, may choose whom he will pay and secure protection, without regard to whether or not the choice falls upon the party lawfully entitled.

It is a mistake to suppose, as counsel have done, that this rule would require the officer to search the records for junior liens in order to ascertain if there be some one other than the general owner who is entitled to the surplus money. A person enforcing a lien upon property is not required to look out for, and protect junior liens of which he is not notified. Constructive notice which, by law, the public records concerning titles afford, does not apply to such a person. He need concern himself only with liens and titles prior and paramount to that he enforces, notice of which the records, or other circumstances, constructively give, or of which he is actually notified.—Wade on Notice, § 203 ; 1 Brick. Dig., 545, § 232.

We think the undisputed evidence shows, without room for a contrary inference, that there was, after the sale, dispute between plaintiffs and Cannon, each asserting a right to the proceeds, after payment of the taxes, and that defendant decided the dispute in Cannon's favor and paid the money to him. He states himself that he paid it to Cannon, because of the doubtful construction of the statute, knowing that plaintiffs held a mortgage on the mule, and were claiming the right to credit the balance of the proceeds on the mortgage debt. When plaintiffs bid off the mule at $70, defendant declined to yield to their demand to be permitted to satisfy the bid by paying the taxes and costs and crediting the balance on the mortgage debt, for the asserted reason that he must have the balance to pay to Cannon. He then accepted the next highest bid of $65, received the money and paid the surplus to Cannon.

If there was error in the principles of law ruled by the court touching the objections to the testimony of John Collins in reference to the amount owing upon the mortgage debt, it was without injury to the defendant, for the reason that there was no other evidence in the case tending to show that any part of the note secured by the mortgage had been paid ; so that, if the testimony objected to had been excluded the jury would have been compelled to treat the entire debt as unpaid. The crea-

tion of the mortgage debt and security being established, the burden was upon the defendant, who stands upon the rights of Cannon, to prove they had been subsequently satisfied, if such was claimed to have been the case.

The action for money had and received is an appropriate remedy under the facts of this case. It was the defendant's duty to pay the surplus to the party lawfully entitled to receive it, and the law implied a promise on his part to do so. It is unlike the case of *Osborn v. Bell*, 5 Denio, 370, 49 Am. Dec. 275, relied upon by appellant's counsel. There the tax collector tortiously sold property of the plaintiff's intestate. The plaintiff waived the tort and sued in assumpsit, as for goods sold, and for money had and received, but there was no proof that the officer had received the proceeds, hence none whether or not he had, in his official capacity, paid them over to the State without any claim or demand therefor having been made upon him by the owner of the property. The court suggested the question whether, if these facts had appeared, there could have been a recovery against the officer for money had and received, but held, that if there could have been, yet, no recovery could be had upon proof merely of trespass. The court, after referring to these deficiencies of proof, said: "But in all these respects, the bill of exceptions is deficient; it does not show that the defendant received or paid over any money, or that he ever heard of the claim of the intestate, until this action was brought. The case then, so far as respects a right to recover for money had and received, is but partially presented, and that question not being formally made in the trial will be dismissed without the expression of any opinion on it. The judge charged, 'that the action for goods sold was well brought * * * ' to which an exception was taken by the defendant, and this presents the point to be considered."

That court, so far as any principle declared in the opinion is to the contrary, would have held the defendant liable, in this form of action, for a surplus received upon a lawful sale, under the circumstances of this case. By every sort of legal intendment the surplus was received by the defendant under expectation and promise to pay it to its lawful owner. What else did,

[Birmingham Dry Goods Co. v. Bledsoe.]

or could he expect to do with it? He did not intend to pay it to the State. Did he expect to appropriate it to his own use, or pay it to some one not entitled to it?

Plaintiffs had the right, but were not compelled, to remove the tax lien before sale. It was optional with them.

Touching the motion of defendant to require plaintiffs to produce their books, no such question is raised by this record as the act of December 13, 1894, (Acts, 1894-95, p. 60, Code of 1896, §§ 1859, 1860), authorizes. If under the circumstances of this case, it might be assigned as error in this court, that the trial court refused to give the party opportunity to make a motion under the act, it did not appear from the oral motion which was made, that any fact existed which the statute provides as basis of the order requiring the production of books or writings.

The mortgage was executed to Collins Bros. & Co., a partnership in its firm name. The suit was brought in the names of the members of the partnership as partners doing business under the firm name of Collins Bros. & Co. This was proper. There was no variance.

Affirmed.