KYLE, Appellant, *v.* CHESTER, Respondent.

(No. 2,926.)

(Submitted January 31, 1911.   Decided February 2, 1911.)

[113 Pac. 749.]

*Actions—Form—Contract or Tort—Waiver of Tort—Attachment—Complaint—Insufficiency.*

Action—Form—Contract or Tort.
    1.   A complaint alleging that the defendant negligently drove eight steers belonging to plaintiff onto the inclosed right of way of a railroad, where they were killed by a passing train, without alleging any benefit to the defendant, states a cause of action in tort and not upon an express or an implied contract.

Form of Actions—Contract or Tort—Waiver of Tort.
    2.   The same act or transaction may constitute a cause of action both in contract and in tort, and a party may have an election to pursue either remedy, and to waive the tort and sue in contract; but a right of action in contract cannot be created by waiving a tort, and the

duty to pay damages for a tort does not imply a promise to pay them upon which assumpsit may be maintained.

Attachment—Discharge—Insufficiency of Cause of Action—Complaint— Affidavit for Attachment.

3. Under Revised Codes, section 6656, authorizing an attachment in actions on an express or an implied contract and sections 6681 and 6683 relating to the discharge of attachments, an attachment must be discharged where the complaint does not state a cause of action in contract, although the affidavit for the attachment does state such cause of action. ·

*Appeal from District Court, Valley County; John W. Tattan, Judge.*

ACTION by Mary A. Kyle, as administratrix of the estate of D. C. Kyle, deceased, against J. D. Chester. Judgment for defendant, and plaintiff appeals. Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Hurd & Lewis,* for Appellant.

The ground of the motion to dissolve the attachment, in the lower court, was "that the cause of action set forth in said complaint is not an action upon a contract, express or implied, for the direct payment of money." It is, of course, apparent that there is here no express contract; but it seems equally plain that there was, at the moment of the taking of the property, a promise implied by law on the part of the defendant to reimburse the plaintiff for his loss. An implied contract is one, the existence and terms of which are manifested by conduct. (Revised Codes, sec. 5014.) It may be admitted that a tort was committed by the defendant in driving the plaintiff's cattle upon the right of way of the Great Northern Railway Company and penning them there. Nor can it be denied that this act of the defendant was a conversion. (See *Tuttle* v. *Hardenberg,* 15 Mont. 219, 38 Pac. 1070.) One of the cases cited in Cooley on Torts, second edition, 524, upon this subject is *Tobin* v. *Deal,* 60 Wis. 87, 50 Am. Rep. 345, 18 N. W. 634, in which case the defendant was charged with having driven the plaintiff's cattle from the defendant's field into the public highway and

then away along said highway, in consequence of which acts the same were lost. This was held to be conversion.

According to the old doctrine, the plaintiff's sole remedy in a case of this kind was an action at tort, but it is now well established that, under circumstances such as these, the plaintiff may waive the tort and sue in *assumpsit*—that is, upon the implied contract—for the value of the property converted. (Cooley on Torts, 2d ed., 107; *Mackel* v. *Rochester* (Mont.), 135 Fed. 904; *New York Market Gardener's Assn.* v. *Adams Dry Goods Co.*, 115 N. Y. App. Div. 42, 100 N. Y. Supp. 596; *Tidewater Quarry Co.* v. *Scott*, 105 Va. 160, 115 Am. St. Rep. 864, 52 S. E. 835, 8 Ann. Cas. 736; 21 Ency. of Pl. & Pr. 1023, and cases cited; *Monroe* v. *Cannon*, 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863; Pomeroy's Code Remedies, 4th ed., sec. 459.)

The plaintiff (appellant here), while alleging the facts constituting the conversion, has waived the tort, and sued in *assumpsit*. It will be urged that there was no benefit to the defendant, but it nowhere appears from the complaint that the defendant has not benefited by his tortious acts; nor has the defendant so shown by affidavit, or by any other method; while it affirmatively appears from plaintiff's affidavit that defendant "is indebted to plaintiff upon an implied contract for the direct payment of money," *etc.* If the affidavit be sufficient, the writ should be sustained. (*Newell* v. *Whitwell*, 16 Mont. 243, 40 Pac. 866.)

*Mr. John Slattery*, for Respondent.

Assuming that the complaint sufficiently charges a conversion by defendant, the question arises: Is the conversion of such a nature that the law will imply on the part of the defendant a promise to pay plaintiff the value of the property converted? Under the common law, the party whose property was unlawfully converted was limited to three remedies, namely, trover, trespass, and replevin. (7 Ency. of Pl. & Pr. 368.) This rule was subsequently relaxed so as to allow the injured party to waive the tort and sue the wrongdoer in *assumpsit* for money

had and received, in cases where the latter had sold the property and received the proceeds of the sale. (7 Ency. of Pl. & Pr. 369; 4 Cyc. 332.) The rule was later extended so as to permit a waiver of the tort and suit in *assumpsit* where the tort-feasor had not sold or disposed of the converted property, but still retained it. (*Galvin* v. *Mac Mining & Milling Co.,* 14 Mont. 508, 37 Pac. 366; 4 Cyc. 334.) Unquestionably these extensions of the former rule are based upon the theory that the wrongdoer has received a benefit from his wrongful act, in that he has in his possession property, or the proceeds of the sale of property, belonging to the injured party for which, in equity and good conscience, he ought to compensate the aggrieved owner to the extent of the value of the property converted; hence the promise which the law implies. In the instant case, however, there is no consideration to support an implied promise on the part of the defendant, for the reason that it affirmatively appears from the complaint herein that the property converted was *destroyed* as the result of the conversion. In other words, the complaint shows upon its face that the defendant did not receive a benefit from his alleged wrongful acts. Accordingly, this case is not within the rule laid down in *Galvin* v. *Mac Mining & Milling Co., supra,* nor within that supported by the text in 4 Cyc. 332, and the cases there cited.

In order to justify the issuance of the writ of attachment the action must be upon a contract, express or implied, for the direct payment of money. (Revised Codes, sec. 6656.) The remedy by attachment is not given in tort actions, but only in case of indebtedness arising upon contracts. (*Griswold* v. *Sharpe,* 2 Cal. 17; *Mudge* v. *Steinhart,* 78 Cal. 34, 12 Am. St. Rep. 17, 20 Pac. 147; *Walker* v. *McCusker,* 65 Cal. 360, 4 Pac. 206; *McCusker* v. *Walker,* 77 Cal. 208, 19 Pac. 382; *Tabor* v. *Big Pittsburg Consol. Silver Min. Co.* (Colo.), 14 Fed. 636, 4 McCrary, 299; 4 Cyc. 446; 3 Am. & Eng. Ency. of Law, 191.)

MR. JUSTICE SMITH delivered the opinion of the court.

After this action was begun the plaintiff, D. C. Kyle, died, and Mary A. Kyle, as administratrix, was substituted.

It is alleged in the complaint that the defendant negligently drove eight steers belonging to the plaintiff onto the inclosed right of way of the Great Northern Railway, where they were killed by a passing train. The last paragraph alleges that the defendant thereby became indebted to the plaintiff for the value of the steers. With his complaint the plaintiff filed an affidavit for attachment in the form required by statute, wherein he also alleged that Le had sold and delivered the steers to the defendant at the latter's request. The writ was issued by the clerk, but the district court of Valley county afterward, on defendant's motion, entered an order discharging the attachment. From that order an appeal has been taken.

We think the order was properly made. This is not a case wherein the plaintiff may sue as upon an implied contract, waiving the tort, as is the familiar expression. As long ago as 1810, in the case of *Whiting* v. *Sullivan*, 7 Mass. 107, Chief Justice Parsons said: "The law will not imply a promise of any person against his own express declaration; because such declaration is repugnant to any implication of a promise." In *Webster* v. *Drinkwater*, 5 Greenl. (Me.) 319, 17 Am. Dec. 238, the court said: "It is a principle well settled that a promise is not implied against or without the consent of the person attempted to be charged by it. * * * And where one is implied, it is because the party intended it should be, or because natural justice requires it, in consideration of some benefit received." Chief Justice Beardsley said in *Osborn* v. *Bell*, 5 Denio, 370, 49 Am. Dec. 275: "It was not shown [on the trial of this case], that the defendant received any benefit from the seizure and sale of the property. No express promise to pay for the goods was pretended, and every feature of the transaction repels the idea that the defendant intended to have one implied from what he did. He may have been a trespasser, but I see no ground on which he can be held liable for these goods as sold to him. If he can be, such an action is, in almost every imaginable case, a concurrent remedy with trover, replevin, and trespass for personal property. It may be a con-

current remedy where the property has been appropriated by a wrongdoer to his own use; but unless that fact is shown, I think no case will be found in which it has been held that a promise to pay for the goods is implied by law.'' The supreme court of Wisconsin, in *Norden* v. *Jones,* 33 Wis. 600, 14 Am. Rep. 782, held that the rule laid down in *Webster* v. *Drinkwater, supra,* correctly embodies the governing principle upon which the law raises a promise to pay. In the case of *Tightmeyer* v. *Mongold,* 20 Kan. 90, the court held that where one's cattle had damaged the crops of another, and there was no testimony showing that the owner of the cattle had benefited thereby, the owner of the crops had no right of election, but must bring his action *ex delicto.* The court, in the course of the opinion, said: ''The whole discussion of waiving the tort and suing on the contract is reduced to the single question, When is a promise implied by the law?'' The case of *Webster* v. *Drinkwater, supra,* is then cited with approval. The same court in *Fanson* v. *Linsley,* 20 Kan. 235, said: ''We do not think that the cause of action stated in defendant's third defense is a proper subject of either setoff or counterclaim. It does not appear from such defense that the plaintiff received or expected to receive any benefit from his wrongdoing, and the relief asked for by the defendant is not for the value of any benefit resulting to the plaintiff, but is for damages sustained by the defendant. The cause of action therefore does not arise from any contract, express or implied.'' (See, also, *National Trust Co. etc.* v. *Gleason,* 77 N. Y. 400, 33 Am. Rep. 632; *New York G. & T. Co.* v. *Gleason,* 78 N. Y. 503.) The rule is well stated in *Cooper* v. *Cooper,* 147 Mass. 370, 9 Am. St. Rep. 721, 17 N. E. 892, as follows: ''The same act or transaction may constitute a cause of action both in contract and in tort, and a party may have an election to pursue either remedy. In that case he may be said to waive the tort and sue in contract. But a right of action in contract cannot be created by waiving a tort, and the duty to pay damages for a tort does not imply a promise to pay them, upon which *assumpsit* can be maintained.'' Ordinarily, when the conduct of a person is such as to raise a clear presumption that he does not intend

to do a certain act, he will not thereafter be charged with such intention by implication. (*State Bank* v. *Forsyth*, 41 Mont. 249, 108 Pac. 914, 28 L. R. A., n s., 501.) In the light of the foregoing authorities it is clear that the district court correctly held that the complaint did not state a cause of action in contract, either express or implied.

The case of *Monroe* v. *Cannon*, 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863, is illustrative of that class of cases in which the defendant derived a benefit from his wrongful act; but we find nothing in the record of this case to indicate that defendant received any benefit from his act.

The affidavit for attachment does not set forth the same cause of action found in the complaint. This affidavit may have been sufficient on its face to warrant the clerk in issuing the writ (see *Newell* v. *Whitwell*, 16 Mont. 243, 40 Pac. 866), but the court must look to the complaint to ascertain whether it states a cause of action in contract, express or implied. The fundamental question is whether the complaint states such a cause of action. As this complaint does not, the attachment was properly discharged. (Revised Codes, secs. 6656, 6681, 6683.)

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

