(No. 22361.—

SAM HOWARD, Trustee in Bankruptcy, Appellant, *vs.* HORTENSE N. SWIFT *et al.* Exrs. Appellees.

*Opinion filed March 13, 1934—Rehearing denied April 10, 1934.*

ASHCRAFT & ASHCRAFT, (EDWIN M. ASHCRAFT, JR., CARROLL J. LORD, and RUSSELL F. LOCKE, of counsel,) for appellant.

SAMUEL A. & LEONARD B. ETTELSON, and ALBERT H. and HENRY VEEDER, (SAMUEL A. ETTELSON, EDWARD C. HIGGINS, and CARL J. APPELL, of counsel,) for appellees.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The appellant (hereinafter called the claimant) filed his claim in the sum of $37,308,646 against the executors of the will of Edward F. Swift, deceased, appellees herein, (hereinafter called the defendants,) in the probate court of Cook county. The claim is divided into 4 sub-heads numbered from 1 to 4, inclusive, viz.:

(1) Charges the purchase of stock of the Corporation Securities Company of Chicago (hereinafter called the Securities Company) from June 11, 1930, to April 16, 1932,

through the fraudulent direction and action of the officers and directors of the Securities Company, of which company Edward F. Swift was one of the directors, for the fraudulent and unlawful purpose of creating and maintaining a false and fictitious market value on the capital stock of the corporation. Amount of claim, $9,708,350.

(2) Charges the purchase of 188,734 shares of capital stock of the Middle West Utilities Company on August 8, 1930, by the Securities Company through the fraudulent action of the officers and directors of the Securities Company, including the deceased, for the fraudulent and unlawful purpose of creating and maintaining a false and fictitious value on the capital stock of the Middle West Utilities Company. Amount of claim, $5,567,653.

(3) Charges that on December 31, 1930, 20,300 shares of the capital stock of the Peoples Gas, Light and Coke Company, which were the property of the Securities Company, were exchanged and delivered by the latter to the Insull Utilities Investments, Inc., for shares of the capital stock of the latter, such stock last named being without value on said date, and that such exchange and delivery were effected through the fraudulent action of the officers and directors of the Securities Company, including the deceased. Amount of claim, $7,105,000.

(4) Charges that the Securities Company expended money in the purchase of stock rights issued by the Insull Utilities Investments, Inc., and in the exercise of such rights in subscribing for the capital stock of the latter on September 15, 1930; that such shares of stock were without value on said day, the purchase of such rights and such subscription to said stock being effected through the fraudulent action of the officers and directors of the Securities Company, including the deceased, Samuel Insull and divers other persons. Amount of claim, $14,852,643.

The defendants filed a written motion in the probate court to dismiss the claim for want of jurisdiction, assign-

ing, with other grounds in support of such motion, that the alleged claim is not a claim within the meaning and intent of section 20 of article 6 of the State constitution, and that such alleged claim could not be considered and adjudicated by the probate court in the administration and settlement of the estate; that the alleged claim is one arising out of tort, and under section 20 the probate court had no jurisdiction to pass upon and adjudicate such claim; that if the alleged claim is within the terms and provisions of sections 60, 61, 66, 67 and 70 of the Administration act, such sections are severally in that respect unconstitutional. Attached to this motion was the verified statement of an auditor and accountant. The affidavit is quite voluminous. Amongst other things it states, in substance, that such accountant had on different occasions assisted in making audits of the so-called Insull Utilities Companies, stating in a general way the immense and complicated nature of the business of the company, the involved accountings and appraisals that would be necessary to be made in order to determine the value of the stocks of such companies on any given date; that the Securities Company was not an operating utility company but an investment securities company; that its assets substantially consisted of securities of numerous other corporations, several of which were holding companies, which in turn owned the stocks and securities of other companies. One of the operating companies was the Peoples Gas, Light and Coke Company. Another of such holding companies was the Middle West Utilities Company, which on August 8, 1930, controlled various companies, to the number of 239 operating utility subsidiaries, 24 holding companies and 13 non-utility subsidiaries, having consolidated resources of $1,500,000,000. The affidavit set out a diagrammatic representation as of April 14, 1932, of the Middle West Utilities Company and its leading subsidiaries. The affidavit further stated facts disclosing the enormity

and complexity of the task of determining the actual value of stocks and securities of the various companies listed as owned by Insull Utilities Investments, Inc., covering the period of time included by the alleged claim.

The record shows that the claimant asked for and was allowed by the probate court ten days to answer the motion and the affidavit. However, no answer to the motion and no counter-affidavits were filed by the claimant. The probate court allowed the motion and dismissed the claim. From that judgment the claimant appealed to the circuit court. In that court the defendants made a motion to dismiss, supported by such affidavit. The circuit court dismissed the claim and entered a written order finding and holding, amongst other rulings, that such claim was not within the jurisdiction of the probate court as defined and limited by section 20 of article 6 of the constitution of this State. From such final order the claimant has prosecuted an appeal direct to this court.

The contentions made by the claimant may be summarized under two headings: (1) That the probate court has general jurisdiction to hear and adjudicate upon all claims that may be made against the estate of a decedent; (2) that the claim in question does not arise out of tort but is a money claim equitable in its nature, of which the probate court has jurisdiction.

The jurisdiction of the probate court is defined and restricted by section 20 of article 6 of the State constitution. So far as applicable to this case, section 20 provides: "Said courts, when established, shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons," etc. The probate court, by virtue of the constitution, is therefore not a court of general jurisdiction, but its jurisdiction is circumscribed and restrained by the constitution. Any legislative acts which attempt to extend such jurisdiction beyond that conferred by the constitution are violative of the constitution. Such

court has no general equitable jurisdiction but can only exercise equitable power within the zone conferred by the constitution. (*Hannah* v. *Meinshausen,* 299 Ill. 525; *People* v. *Seelye,* 146 id. 189; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180; *People* v. *Loomis,* 96 id. 377.) The probate court has no jurisdiction over trust estates. (*Dingman* v. *Beall,* 213 Ill. 238.) The law which purported to confer upon probate courts jurisdiction to supervise and control testamentary trusts created by wills proved and probated in probate courts was held by this court as not relating to a "probate matter," as defined by section 20, and it was held unconstitutional. (*In re Estate of Mortenson,* 248 Ill. 520; *Frackelton* v. *Masters,* 249 id. 30.) A contingent claim which has not developed into an absolute liability cannot be proved and allowed in the probate court against an estate. *Foreman Trust and Savings Bank* v. *Tauber,* 348 Ill. 280; *Chicago Title and Trust Co.* v. *Fine Arts Building,* 288 id. 142; *Pearson* v. *McBean,* 231 id. 536.

The liability sought to be imposed upon the decedent's estate is founded upon the alleged fraudulent and unlawful acts of the deceased while in his lifetime acting as an officer and director of the Securities Company. We can not agree with the contention of the claimant that the cause of action stated is a money claim, equitable in its nature. The cause of action stated is clearly one of tort. Generally speaking, torts may be divided into two classes: (1) Where the tort feasor is enriched by his wrongful act; (2) where the tort feasor derives no financial gain from his wrongful act. It is not averred in the claim that the decedent by his alleged tortious acts either directly or indirectly derived any pecuniary benefits by reason of the misconduct charged against him. In the first class of torts it has been generally held that the injured party may waive the tort and sue for money had and received, or for an accounting on an implied or constructive contract upon the

principle that the tort feasor is bound to restore to the injured party the gain acquired by him by reason of his improper and wrongful acts. (*Arnold* v. *Dodson,* 272 Ill. 377; *Donovan* v. *Purtell,* 216 id. 629; *Toledo, Wabash and Western Railway Co.* v. *Chew,* 67 id. 378; *People* v. *Small,* 319 id. 437.) Such, however, is not the rule when there has been no enrichment of the tort feasor emanating from the tort committed by him. In the last named situation the action must be in tort. *Hambly* v. *Trott,* 1 Cowp. 371; *Schall* v. *Camors,* 251 U. S. 249, 64 L. ed. 247; *In re Locher's Estate,* 219 Pa. 42; *Stanton* v. *Philadelphia and Reading Railway Co.* 236 Pa. 419, 84 Atl. 832; *Fanson* v. *Linsley,* 20 Kan. 235; *Tightmeyer* v. *Mongold,* 20 id. 90; *National Trust Co.* v. *Gleason,* 77 N. Y. 400; *Reynold* v. *Padgett,* 94 Ga. 347; *Kyle* v. *Chester,* 42 Mont. 522, 113 Pac. 749; *Webster* v. *Drinkwater,* 5 Me. 319, 17 Am. Dec. 238; *Page* v. *Babbit,* 21 N. H. 389; *Osborn* v. *Bell,* 5 Denio, 370, 49 Am. Dec. 275.

Probate courts created either by constitutional provisions similar to ours or by statutory enactment akin to our constitutional provisions exercise jurisdiction only over claims growing out of contracts either express or implied, and do not have jurisdiction of claims *ex delicto. In re Locher's Estate, supra; Comstock* v. *Matthews,* 55 Minn. 111, 56 N. W. 583; *Evans* v. *Hoyt,* 153 Ark. 334; *Ferrill's Admx.* v. *Mooney's Exrs.* 33 Tex. 220; *Feld* v. *Borodofski,* 87 Miss. 727, 40 So. 820, 11 R. C. L. 191.

In the case at bar there was no contractual relationship between the decedent and claimant by means of which the deceased in his lifetime obtained for his personal gain any money or property of the Securities Company. There was no privity between the claimant and the decedent in relation to the supposed loss sustained by the Securities Company by reason of the alleged wrongful and tortious acts of the decedent while he acted as an officer and director of the Securities Company, damages for which

tortious acts are sought to be recovered in the present proceeding. To hold that the probate court had jurisdiction of an action in a case where the tort feasor was not enriched by his tortious acts would result in imposing upon that court the trial of cases brought to recover damages for personal injuries, for assaults and kindred torts. "As men whose intentions require no concealment generally employ the words which most directly and aptly express the ideas they intend to convey, the enlightened patriots who framed our constitution, and the people who adopted it, must be understood to have employed words in their natural sense and to have intended what they have said." (*Gibbons* v. *Ogden,* 9 Wheat. 188.) In employing the terms "probate matters" and "settlement of estates of deceased persons," as stated in our constitution, in our opinion the framers of the constitution used such words in their commonly accepted meaning and did not contemplate conferring upon such court jurisdiction to adjudicate actions in tort. While it is true that the circuit court had original jurisdiction to hear and decide an action in tort, yet on the appeal from the probate court the general jurisdictional power of the circuit court on the appeal was limited and circumscribed to the same jurisdictional subjects as the probate court. *Motsinger* v. *Chenoweth,* 308 Ill. 31; *Road District* v. *McKinney,* 299 id. 130; *Seidschlag* v. *Town of Antioch,* 198 id. 413; *Herman* v. *Highway Comrs.* 197 id. 94; *Dodge* v. *People,* 113 id. 491.

It would unduly prolong this opinion to undertake the review of the decisions of this court cited by the claimant in support of his position that the injured party may waive the tort and sue in assumpsit on a money claim equitable in its nature, but suffice it to say that an examination of the cases cited discloses that in each of those cases the tort feasor had been enriched by reason of his tortious misdeeds.

The claimant cites *People* v. *Small, supra,* in support of his claim that sections 60 and 70 of the Administration

act require all claims, regardless of classification or character, to be filed in the probate court in order to participate in the inventoried assets of the estate. In that connection our attention is directed to that portion of the opinion dealing with the liability of the Edward C. Curtis estate. The opinion holds that the amount ordered by the decree to be paid should be limited to such assets as had not been inventoried or accounted for by the administrator. The claimant misinterprets the opinion. No claim was ever filed against the estate. The participation in the assets of the estate was so limited because the bill for accounting was not filed until after the expiration of more than one year from the date of the granting of the letters.

The claimant also contends that the language employed in sections 60 and 70 of the Administration act clearly comprehends the exhibiting in the probate court of all types of legal liabilities of the decedent, both *ex contractu* and *ex delicto*. In view of what we have heretofore said, if we are to give such sections the meaning urged by the claimant, such sections, in so far as they attempt to confer upon the probate court jurisdiction to hear and determine actions *ex delicto*, would be violative of section 20.

The claimant was not without remedy even though his case was in tort. The circuit court, by section 12 of article 6 of our constitution, has original jurisdiction of all causes in law and equity. Under this constitutional provision the circuit court has jurisdiction of actions against administrators and executors to enforce the legal liabilities of the decedent regardless of the character or form of the action, and such jurisdiction is not impaired either by section 20 or the statute conferring original jurisdiction on the probate court "of all probate matters" and "the settlement of estates of deceased persons." *Darling* v. *McDonald*, 101 Ill. 370; *Roberts* v. *Flatt*, 142 id. 485; *Morse* v. *Pacific Railway Co.* 191 id. 356; *Starrett* v. *Brosseau*, 208 id. 408.

We have considered all the errors assigned on the record and from. a review of the whole record find the circuit court was warranted in dismissing the claim.

The judgment of the circuit court is correct and is affirmed.

*Judgment affirmed.*