Philip Altepeter, Plaintiff-Appellant, v. The Virgil State Bank, Defendant-Appellee.

**Gen. No. 10,551.**

Opinion filed March 4, 1952.
Released for publication March 24, 1952.

THOMAS P. O'MALLEY, of Aurora, and DENNIS J. COLLINS and JULIUS C. MATTESON, both of DeKalb, for appellant; THOMAS P. O'MALLEY and J. ROBERT MURPHY, both of Aurora, of counsel.

BURRELL & BURRELL, of Freeport, and EMIL J. BENSON, of Batavia, for appellee; D. M. BURRELL, and R. B. HOLTAN, both of Freeport, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

From an appropriate judgment rendered upon a motion of the defendant for judgment on the pleadings by the circuit court of Kane county in bar of the action of the plaintiff, the plaintiff appeals.

The verified complaint, as amended, consists of five Counts. Count one alleges that on and prior to January 14, 1949, the defendant, Virgil State Bank, was a duly organized Illinois banking corporation carrying on a banking business in the Village of Virgil, Kane county, Illinois; that plaintiff was and had been a regular customer of the defendant and on that day entered the premises of the defendant for the purpose of transacting business therein as a customer or invitee of the defendant and was in the exercise of ordinary care for his own safety; that on said date and for a long time prior thereto defendant had expressly or impliedly undertaken to safeguard the regular customers of the

bank while upon its premises from the danger of injury or loss due to armed robbery and having so undertaken, it became and was the duty of the defendant to carry out such undertaking and to exercise ordinary care in carrying out such undertaking and to protect plaintiff and its other customers from injury; that notwithstanding its said duty, the defendant negligently and carelessly failed to take sufficient precautions so as to safeguard the regular customers of the bank, while upon its premises, from the danger of injury or loss due to armed robbery and as a direct and proximate result of the aforesaid negligence and carelessness, two armed robbers, on the said date, entered defendant's premises and attempted to rob the bank, and one of the said robbers fired a bullet which struck the plaintiff and as a direct and proximate result thereof plaintiff was injured and permanently disabled.

The second Count repeated many of the allegations of the first Count with reference to the plaintiff's presence in the bank and the injuries he sustained and charged that on January 14, 1949, and for a long time prior thereto, the defendant had known or in the exercise of reasonable care should have known that there was a danger that the regular customers of the bank while upon its premises would be injured or suffer loss due to armed robbery, and that it then and there became and was the duty of the defendant to safeguard its customers against such known danger and to exercise ordinary care in so doing.

Count three alleged that the defendant by its agents or servants wilfully and wantonly failed to take sufficient precautions so as to safeguard the regular customers of the bank while upon its premises from the danger of injury or loss due to armed robbery and that as a direct and proximate result of the aforesaid wilful and wanton misconduct, two armed robbers, on January 14, 1949, entered the defendant's premises and attempted to rob the bank and in so doing one of the

589

said robbers fired a bullet which struck and injured the plaintiff.

Count four realleges the duty of the defendant to exercise ordinary care in safeguarding its customers from armed robbery and then charges that the defendant wilfully and wantonly failed to take sufficient precautions to so safeguard its regular customers and concludes that as a result of such failure plaintiff was shot and injured by one of the robbers.

Count five, after alleging that the plaintiff was in the exercise of due care upon the occasion in question, charges that on or before January 14, 1949, the defendant had represented, warranted, and promised expressly or impliedly, through the actions of its duly authorized officers, directors, agents and servants, that it would at all times exercise the highest degree of care for the safety of the plaintiff and its other regular customers, and that the premises of the defendant would at all times be a safe place to transact business with the bank; that said representations, warranties and promises were made in consideration of the continued patronage of its customers, including the plaintiff; that on or before said date the defendant had known of the danger of armed robbery and had undertaken to station at its door a guard who was to admit only the regular customers of the bank, upon the instruction of the cashier, a duly authorized officer and director of the bank, and that the said undertaking was made known to the plaintiff and other regular customers of the bank as an invitation to the plaintiff and other regular customers of the bank to continue to transact their business therein, and in reliance thereupon, the plaintiff did continue to transact business in and with the bank, and was lawfully upon the premises of the bank on the date and occasion in question; that had the defendant carried out its aforesaid representations, warranties

590

and promises, and had the defendant fulfilled its aforesaid undertaking, the plaintiff would today be in good health and would not have been injured; that the defendant, with knowledge of the probable consequences, failed and neglected to perform and carry out said representations, warranties and promises and failed to fulfill its aforesaid undertaking and took insufficient care for the safety of the plaintiff and its other customers so that the premises of the defendant were not a safe place to transact business in and with the bank. This Count then charges that the defendant permitted two armed robbers to enter the banking premises on the aforesaid date, without identification as regular customers, and without the instruction of the cashier, at a time when the plaintiff and other regular customers of the bank were upon the said premises in reliance upon the aforesaid undertaking. This Count concludes by charging that as a direct result of the conduct of the defendant, as alleged, two armed bandits entered the premises of defendant on January 14, 1949, and in an attempt to rob the bank, fired a gun at the plaintiff, resulting in plaintiff's injuries for which he demanded judgment for one hundred thousand dollars.

The sufficiency of this complaint, or any Count thereof, to state a cause of action was challenged by defendant's motion for judgment. In their brief counsel for appellant say: "This is a suit against a bank corporation for injuries sustained by appellant while lawfully upon the bank's premises. The injuries resulted from the criminal act of a bank robber, who fired a gun at appellant in the course of a bank robbery. Obviously the mere facts of a robbery happening in a bank, and resulting injury to a bank customer are insufficient grounds to predicate liability of the bank for the injuries. As appellee might point out the bank is not an insurer of the safety of its patrons." Counsel insist, however, that Counts one and three state a good cause

of action in tort against appellee on the basis of a duty assumed by the bank and that the duty alleged to have been assumed by the bank was to safeguard the plaintiff, as a customer of the bank, from injury by a bank robber while he, the plaintiff, was on the bank's premises. Counts one and three do so allege, and Count one charges that this duty was breached by the bank by failing, negligently and carelessly, to take sufficient precautions to safeguard the plaintiff while on the bank's premises from the danger of being injured by an armed robber, while Count three alleges that this duty was breached by the bank by wilfully and wantonly failing to take sufficient precautions to safeguard the plaintiff while on the bank's premises from the danger of being injured by an armed robber.

 In our opinion, neither of these Counts state a cause of action. It is not sufficient that the complaint allege a duty. The pleader must allege facts from which the law will raise a duty. The duty which the law raises from the facts alleged in these Counts is that defendant must exercise ordinary care to safeguard the person of the plaintiff from injury while on its premises. No facts are alleged from which any one could conclude that defendant did not discharge this duty to the plaintiff. The allegation that defendant failed to take sufficient precautions to safeguard the plaintiff is a conclusion of the pleader, and charging that the defendant ''negligently and carelessly'' and ''wilfully and wantonly'' failed to take sufficient precautions to safeguard the plaintiff are simply conclusions of the pleader. Good pleading requires that facts must be alleged from which the law will raise a duty and facts must then be alleged showing an omission of that duty and resulting injury. (*Overstreet v. Illinois Power & Light Corp.*, 356 Ill. 378, 383, 384; *Hart v. Washington Park Club,* 157 Ill. 9, 14.)

■ Counsel for appellant also insist that Counts two and four state a cause of action on the basis of a known danger. The second Count charges that the defendant knew, or should have known, that the plaintiff, while on the bank's premises, would be injured due to armed robbery; that it therefore became the duty of the defendant to exercise ordinary care to safeguard the plaintiff against such danger and alleges that the defendant breached this duty by negligently and carelessly failing to take sufficient precautions to safeguard the plaintiff from injury due to armed robbery. The fourth Count charges that the defendant wilfully and wantonly failed to take sufficient precautions to safeguard the plaintiff. What we have said with reference to Counts one and three likewise applies to these Counts. No facts are alleged which bring the right of recovery under any of these Counts within any statutory or common-law rule of liability.

■ Count five, according to appellant's brief, is a complete contractual cause of action setting up "an alternative cause of action entitling appellant to elect at a later stage in this proceeding which count to rely upon." What this Count alleges is that the defendant expressly or impliedly represented and promised that it would at all times exercise the highest degree of care for the safety of the plaintiff and that its premises would be a safe place for the plaintiff to transact business with the bank; that on and before January 14, 1949, the defendant had known of the danger of armed robbery and had stationed a guard at its door who was to admit only regular customers of the bank; that this guard permitted two armed robbers to enter the bank without identification as regular customers and in an attempt to rob the bank fired a gun at the plaintiff and injured him. This Count alleges that the contractual undertaking of the defendant with the plaintiff was to exercise the highest degree of care for the safety of the

593

plaintiff and to keep its premises a safe place for the transaction of his banking business and in order to do so it stationed a guard at the entrance door instructed to admit only regular customers of the bank. In the absence of any averment that the bank either directly or indirectly derived any benefit by reason of the misconduct charged against it and where it does not appear that there has been any enrichment of the wrongdoer emanating from the wrongful act committed by him, an injured party may not waive the tort and sue upon a breach of an express or implied contract. (*Howard v. Swift,* 356 Ill. 80, 85; *In re Estate of Thomas,* 333 Ill. App. 238.) Furthermore, assuming that this Count alleges a contractual undertaking on the part of the defendant that it would keep its premises a safe place for the plaintiff and would safeguard plaintiff from any injury inflicted by a bank robber, such a contractual undertaking would be beyond the powers expressly or impliedly conferred by the statute under which defendant is organized and doing business. (*Knass v. Madison & Kedzie Bank,* 354 Ill. 554, 561.) The *Knass* case denied the power of a bank to enter into a contract for the sale and repurchase of securities. In our opinion, a contingent liability agreement which would guarantee the absolute safety of the plaintiff upon defendant's premises would be ultra vires the bank, as it would be an undertaking not authorized by statute and which would clearly imperil the rights of its depositors.

Counsel, in support of their contention that some of the Counts state a cause of action, call our attention to the case of *Neering v. Illinois Central R. Co.,* 383 Ill. 366, where it appeared that plaintiff was assaulted by an unknown man while awaiting the arrival of a train at the Riverdale station of defendant's railroad. The complaint charged that defendant failed to afford her the degree of protection required from dangers of

which it had knowledge or which, in the exercise of due care and diligence, it could have reasonably anticipated and provided against. In its opinion, the court stated that the decisive question in the case was whether or not the defendant in knowingly allowing hoboes, tramps and vagrants to loiter about its station and to sleep in its waiting room created a condition which became a menace to the public peace and to patrons who used its passenger station, and, that from such condition could the defendant reasonably anticipate some unlawful act might be committed on patrons using its passenger station? In answering this question in the affirmative, the court, in the course of its opinion, said (pp. 376-7) : "The law recognizes, and it is generally understood, that where lawbreakers congregate they are dangerous to society and are likely to break other laws, and we do not see how it could reasonably be said when vagrants are permitted to congregate they will not become a menace to the public peace or that under such conditions one could not reasonably anticipate they might commit some unlawful act or become dangerous to society. It necessarily follows that, when such a condition is permitted to exist at a passenger station, reasonable and ordinary precaution must be observed for the protection of persons who are patrons of the road and using its passenger station." It was insisted that the defendant railroad company had no knowledge and could not reasonably anticipate that vagrants or any other person would assault plaintiff, and counsel called the attention of the court to the fact that the evidence disclosed that plaintiff had been using the station for a long time and had not been assaulted and that no assault by vagrants had been shown to have been made on other passengers using the station. Answering this contention, the court said: (p. 377) "Of course, if defendant had known plaintiff would be assaulted, and made no effort for her protection, cer-

595

tainly there would have been a failure on its part to exercise reasonable and ordinary care. The question however, is, from the conditions which defendant permitted to exist around its station, could it reasonably anticipate that plaintiff might be assaulted and as a consequence observe reasonable precaution to prevent it. It is our judgment the conditions were such that defendant ought reasonably to have anticipated plaintiff might be assaulted and that there is some evidence that reasonable precaution was not taken for her protection.'' The court then held that the evidence found in the record did tend to establish plaintiff's cause of action and concluded: (p. 382) ''It is fundamental that plaintiff could recover only by proof of specific charges of negligence made in her complaint, and it must further appear that such negligence proximately contributed to or caused the injuries for the damages here sought. It is also fundamental that proof of negligence consists of showing a duty to the person injured, a breach of that duty and an injury proximately resulting from such breach. Here the duty charged against defendant was its duty to afford protection to passengers, including plaintiff, from dangers of which it had knowledge or which, in the exercise of due care and diligence, it could have reasonably anticipated and provided against.''

Counsel for appellant say they realize there are detailed differences in the facts in the *Neering* case from the allegations of the complaint in the instant case but insist that the legal principles applied in the *Neering* case are applicable here. Counsel argue that the bank knew, or should have known, that there was danger of injury to its patrons in the event of an armed robbery and it, therefore, had a duty to afford adequate protection to appellant. In the *Neering* case, as in the instant case, the plaintiff was injured by the criminal act of one not in the employ of the defendant. In the *Neering*

case, however, it appeared that the defendant had knowledge that lawbreakers, hoboes, tramps and vagrants loitered about its premises and slept in its passenger waiting room, and what the court held in the *Neering* case was that from such conditions the company could reasonably anticipate that some unlawful act might be committed upon its patrons and that the evidence disclosed that under the conditions shown to exist, reasonable precaution had not been taken by the company for the protection of the plaintiff. There is no charge in the instant complaint that appellee knowingly permitted robbers or undesirable characters to loiter about its premises. The facts in the *Neering* case are not analogous to the facts alleged in the instant complaint and the legal principles there announced are consequently inapplicable.

Counsel for appellant cite *St. Louis and S. F. Ry. Co. v. Mills,* 271 U. S. 344, 70 L. Ed. 979, 46 S. Ct. 520, and insist that this holding sustains their contention. In that case it appeared that the defendant railway company had voluntarily assumed the duty to guard its employees from an apprehended danger from violence by strikers. There is nothing said in that case helpful to a correct determination of this cause. We have examined the other cases cited and relied upon by counsel for appellant. Some of them involve injuries to invitees occasioned by slipping on banana peels, stumbling over boxes and falling down elevator shafts upon the premises of the defendant storekeeper. In all of them the injuries to the plaintiffs resulted from the negligence of the defendant, but in the instant case it is not alleged that appellant's injuries resulted from any negligence or actionable misconduct on the part of appellee, but the injuries which appellant sustained followed the criminal act of one engaged in the commission of a felony and for whose acts, he, the perpetrator of the crime, is responsible and not appellee, the victim of the armed robbery.

The general principles of law as to an action against corporations in general apply, in the absence of specific statutes, to actions against banks. (7 Am. Jur., Banks, sec. 818, p. 590.) The mere ownership of real property does not render such owner liable for injuries sustained by persons who have entered thereon by invitation of the owner. An owner of property is not an insurer against accidents occurring on the premises of the owner, and an owner's liability to an invitee for injuries not intentionally inflicted must be predicated upon negligence, and no presumption of negligence on the part of the owner arises merely by showing that an injury has been sustained by one rightfully upon the premises. (38 Am. Jur., Neg., sec. 92, pp. 751–2.) The rule is that an occupant or owner of premises owes to an invitee a duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation, not to lead such person into a dangerous trap and to give such person adequate and timely notice and warning of latent or concealed perils which are known to the owner but not to the invitee. (38 Am. Jur., Neg., sec. 96, pp. 754–755.)

An invitee upon the premises of another assumes all normal, obvious or ordinary risks attendant upon the use of the premises. (65 C. J. S., Neg., sec. 50, pp. 542–543.) The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger. (65 C. J. S., Neg., sec. 50, p. 543.) "When an injury occurring on the premises (of an owner or occupant) is the result of the negligence of a third person who does not stand in such a relation to the owner or occupant as to render the doctrine of *respondeat superior* applicable, no liability attaches to the latter unless the circumstances are such that liability can be predicated on the theory of the existence of a public nuisance or of a dangerous condition, known to the owner or occupant,

which he failed to take reasonable precautions to alleviate. . . . As a general principle, the proprietor of a store is not liable for injuries caused by third persons acting independently of him. . . . As stated by some authorities, an independent act by a third person causing injury to a customer is something which a proprietor is not generally bound to anticipate, especially where the independent act is a wilful one." (38 Am. Jur., Neg., sec. 103, pp. 763–764.)

 Restatement of the Law of Torts (Vol. 2, sec. 348) states the rule to be that a public utility or other possessor of land who holds it out to the public for entry for his business purposes is subject to liability to members of the public while upon the land for such a purpose, for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons if the possessor by the exercise of reasonable care could have (2) discovered that such acts were being done or were about to be done, and (b) protected the members of the public by (1) controlling the conduct of the third persons or (2) giving a warning adequate to enable them to avoid the harm.

In *Riley v. Louisville and Nashville R. Co.*, 231 Ky. 564, 21 S. W. (2d) 990, the plaintiff sought to recover for injuries she sustained while a passenger on the train of the defendant. The evidence disclosed that plaintiff's injuries resulted from the action of certain persons who had loosened some rails and who had broken and turned a switch which resulted in diverting the passenger train upon which plaintiff was riding onto a side track where it was wrecked. It was contended by the plaintiff that the defendant was negligent because it located the switch on a curve so that the engineer could not see it and its signals in time to avert danger at the switch; that the fireman failed to maintain a lookout at the time; and that the company failed to use proper safety appliances in the operation of the train. The Supreme Court of Kentucky affirmed

the action of the trial court in directing a verdict for the defendant and, in reviewing the evidence, said: "It is not made to appear that the act of those who wrecked the train could have been anticipated or guarded against and there was no failure by the company to exercise its legal duty to the passenger which can be construed as the efficient cause of her injuries. Appellant's unfortunate condition is the result of the criminal act of those who deliberately wrecked the train and not to any actionable conduct on the part of the appellee." The court also stated that the law is that one cannot be held accountable for the tort or criminal act of a third person having no relation with the one being charged, unless he was guilty of the violation of some duty connected with the crime or act of the other; that it had been often declared that a common carrier is not the insurer of the safety of its passengers as against the felonious acts done by persons not in its employ and over whom it has no control although it may be held liable for a negligent failure of its employees to protect the passengers by the use of means at their command in the exercise of a proper degree of care. The court then referred to *Atchison, T. & S. F. R. Co. v. Calhoun,* 213 U. S. 1, 53 L. Ed. 671, 29 S. Ct. 321, 323 which quoted from Pollock on Torts as follows: "If men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things." The court then concluded: "So passengers on railroad trains necessarily incur the risks and perils incident to travel over which the carrier has absolutely

no control, and which are wholly without its agency, such as unforeseen accidents against which human care and foresight could not guard, hidden forces of nature, unknown to common experience and acts of strangers which could not reasonably be expected.''

*Arp v. Rogers* (Mo.), 99 S. W. (2d) 103, was an action to recover damages for injuries sustained by a guest passenger in a truck which was being driven by one of the owners of the truck. The defendant owner of the truck had stopped the truck on the right-hand curb on a public street in East St. Louis in order to repair the engine of the truck. While so stopped, a stranger approached on the adjoining sidewalk and ordered the defendant to move on. The defendant stated that he would just as soon as he fixed the spark plug and within a couple of minutes had fixed it and started toward the door in order to get into the cab of the truck. The stranger fired two shots, the second shot striking the plaintiff inflicting the injuries sued for. In holding that the defendant driver of the truck breached no duty he owed the plaintiff, the court said: (p. 109) ''Wegehoft (one of the defendants and the driver and co-owner of the truck) had a right to stop and by stopping to repair his engine he breached no duty he owed to plaintiff. Neither did he breach such duty, under the facts here, by failing to move on at the command of the stranger. From plaintiff's own lips it appears that Wegehoft moved away as soon as he had reasonable cause to anticipate violence on the part of the stranger. . . . In the present case there was no substantial evidence tending to show that Wegehoft was negligent, hence plaintiff cannot recover.''

In *Menestrina v. St. Louis Nat'l Stock Yards*, 278 Ill. App. 342, the plaintiff sought to recover damages for the wrongful death of plaintiff's intestate who was killed as the result of a fall occasioned by the breaking of a fence over which deceased climbed in an attempt to

601

escape from a bull. In reversing a judgment of the trial court in favor of the plaintiff, the court said (pp. 348–9): ''Defendant does not dispute that decedent was an invitee of its concern, nor that the latter owed him the common law duty of keeping the premises in reasonably safe condition. It contends, however, that such obligation applies only to those contingencies which are reasonably to be expected and that the occurrence in question was one which could not have been reasonably anticipated or foreseen, and that it was not a use of the fence against which defendant was required to provide. The owner of premises is bound to use reasonable care in so maintaining his property, that those who come thereon by his invitation, whether express or implied, may do so in safety, and if he fails in such duty, and an invitee is injured as a consequence, without negligence or fault on his part, the owner will be required to respond in damages. (Citing cases.) The rule, however, does not require that the owner foresee and guard against or take precautionary measures to avert accidents or injuries, resultant from unusual and unexpected occurrences which could not have been reasonably anticipated and would not have happened unless under exceptional or extraordinary circumstances. (Citing cases.) The accident in question was most peculiar and unusual and one the ordinary mind, which can be guided only by a reasonable estimate of probabilities, would not have anticipated would occur. To hold the owner to have foreseen and guarded against an event so rare and unexpected would be to practically hold it as an insurer against any accident which human caution or foresight could prevent, —a responsibility not exacted by the law.''

No facts are stated in the instant complaint from which it may be ascertained in what manner defendant was guilty of the violation of any legal duty resting upon it. The proximate cause of the injuries

602

which plaintiff sustained was the felonious act of the unknown bank robber. There is no allegation that any act of the defendant was the proximate cause or proximate contributing cause of plaintiff's injuries. There is no allegation that defendant had any superior knowledge concerning any dangers which anyone might encounter on the banking premises this particular day than the plaintiff himself or anyone else. There is no allegation that appellee had any more information about the robbery than did appellant. The perils to customers, officers and employees of a bank, attendant upon a bank robbery or while a bank robbery is in progress were equally within the knowledge of appellant and appellee. There is no charge of any specific negligence on the part of appellee. The illegal act of the bank robber could not reasonably have been foreseen. An independent act of negligence or wilfulness by a third person is an occurrence which a defendant is not bound to anticipate. (*Noonan v. Sheridan,* 230 Ky. 162, 18 S. W. (2d) 976.) An owner of premises is not bound to anticipate the malicious or criminal acts of others by which damage is inflicted. (45 C. J. S., Neg., sec. 495.) It is only when the independent illegal act is of a nature which might have been anticipated by defendant and against which it was defendant's duty to provide that a defendant will be held to be liable.

In our opinion the complaint did not state a cause of action against appellee, and the judgment of the trial court is therefore affirmed.

*Judgment affirmed.*