(No. 45557.—

PINEY BOYD, Appellee, v. RACINE CURRENCY EX-CHANGE, INC., *et al.,* Appellants.

*Opinion filed Nov. 30, 1973.—Rehearing denied Jan. 29, 1974.*

GOLDENHERSH, J., dissenting.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Joseph W. Griffin and D. Kendall Griffith, of counsel), for appellants.

Marshall I. Teichner Ltd. of Chicago (Edwin A. Strugala, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff's complaint was dismissed on motion of the defendants by the circuit court of Cook County for failure to state a cause of action. The appellate court reversed and remanded the cause to the circuit court. (8 Ill. App. 3d 140.) We granted leave to appeal.

This is a wrongful death action against Racine Currency Exchange and Blanche Murphy to recover damages for the death of plaintiff's decedent during an attempted armed robbery. The facts surrounding that event, as alleged in the complaint and admitted by defendants' motion, are: The plaintiff's husband, John Boyd, was present in the Racine Currency Exchange on April 27, 1970, for the purpose of transacting business. While he was there, an armed robber entered and placed a pistol to his head and told Blanche Murphy, the teller, to give him the money or open the door or he would kill Boyd. Blanche Murphy was at that time located behind a bulletproof glass window and partition. She did not comply with the demand but instead fell to the floor. The robber then shot Boyd in the head and killed him.

Plaintiff alleges several acts of negligence by the Racine Currency Exchange and Blanche Murphy. Count I alleges that the defendants owed Boyd, a business invitee, the duty to exercise reasonable care for his safety and that they breached this duty when they refused to accede to the robber's demands. Count I also alleges that defendants acted negligently in adopting a policy, knowledge of which was deliberately withheld from their customers, according

to which their money was to be protected at all costs, including the safety and the lives of the customers.

In count II the plaintiff alleges that the Currency Exchange was negligent in failing to instruct its employees regarding the course of conduct which would be necessary under the circumstances of this case to prevent exposing customers to unreasonable risks of harm. Count II further alleges that the Currency Exchange was negligent in employing a person who was incompetent to fulfill the responsibilities of her position. Negligence is also alleged in the failure to furnish guidelines of how to act in case of armed robbery, and alternatively that it was negligent in failing to disclose to its customers its policy of preserving its monies at all costs.

It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. (*Hamlin's Wizard Oil Co. v. United States Express Co.*, 265 Ill. 156.) The plaintiff contends that a business proprietor has a duty to his invitees to honor criminal demands when failure to do so would subject the invitees to an unreasonable risk. It is claimed that this duty arises from the relationship between a landowner and a business invitee.

It is the general rule in Illinois and other jurisdictions that a person has no duty to anticipate the criminal acts of third parties. (Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 33.) An exception to this rule exists, however, when criminal acts should reasonably have been foreseen. (*Neering v. Illinois Central R.R. Co.*, 383 Ill. 366.) *Neering,* and many of the other cases cited by the parties, involved the question of whether facts existed which should have alerted the defendant to a risk of harm to his invitees by criminals. (See *O'Brien v. Colonial Village, Inc.*, 119 Ill. App. 2d 105; *Stelloh v. Cottage 83,* 52 Ill. App. 2d 168; *Altepeter v. Virgil State Bank*, 345 Ill. App. 585; *Nigido v. First National Bank*, 264 Md. 702, 288 A.2d 127.) These cases are of little help here since our

case presents a question of whether the defendant who is faced with an imminent criminal demand incurs liability by resisting, not whether he is negligent in failing to take precautions against a possible future crime.

Also of little assistance is *Sinn v. Farmers Deposit Savings Bank, 300 Pa. 85, 150 A. 163.* In that case recovery for the plaintiff, who was injured when a bank robber detonated dynamite within the bank, was upheld. The plaintiff alleged that had the bank warned him that a bank robbery was in progress, as they had the opportunity to do, he could have escaped unharmed. The plaintiff's intestate in our case, however, was obviously on notice that a robbery was in progress, and plaintiff does not predicate her claim on the absence of warning.

The Restatement of Torts does not consider the specific issue before us. The Restatement does set forth the principle that a person defending himself or his property may be liable for harm to third persons if his acts create an unreasonable risk of harm to such persons. (Restatement (Second) of Torts, secs. 75 and 83.) However, these sections refer to situations in which the harm is caused directly by a person resisting, not by the criminal, such as where a shot fired at a criminal hits a third person.

We are aware of only two cases which have discussed issues similar to the one with which we are faced here—whether a person injured during the resistance to a crime is entitled to recover from the person who offered the resistance. In *Genovay v. Fox, 50 N.J. Super. 538, 143 A.2d 229, rev'd on other grounds, 29 N.J. 436, 149 A.2d 212,* a plaintiff who was shot and wounded during the robbery of a bowling alley bar claimed that the proprietor was liable because instead of complying with the criminal demand he stalled the robber and induced resistance by those patrons present. The plaintiff was shot when several patrons attempted to disarm the bandit. The court there balanced the interest of the proprietor in resisting the robbery against the interest of the patrons in not being

exposed to bodily harm and held that the complaint stated a cause of action. The court stated: "The value of human life and of the interest of the individual in freedom from serious bodily injury weigh sufficiently heavily in the judicial scales to preclude a determination as a matter of law that they may be disregarded simply because the defendant's activity serves to frustrate the successful accomplishment of a felonious act and to save his property from loss." (50 N.J. Super. at 558, 143 A.2d at 239-40.) The court held that under the circumstances it was for the jury to determine whether defendant's conduct was reasonable.

In *Noll v. Marian, 347 Pa. 213, 32 A.2d 18,* the court held that no cause of action existed. The plaintiff was present in a bank when an armed robber entered and announced "It's a holdup. Nobody should move." The bank teller, instead of obeying this order, dropped down out of sight. The gunman then opened fire and wounded the plaintiff. The court held that even though the plaintiff might not have been injured if the teller had stood still, the teller did not act negligently in attempting to save himself and his employer's property.

In *Lance v. Senior, 36 Ill.2d 516,* this court noted that foreseeability alone does not result in the imposition of a duty. "The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing the burden upon the defendant, must also be taken into account." 36 Ill.2d at 518.

In the present case an analysis of those factors leads to the conclusion that no duty to accede to criminal demands should be imposed. The presence of guards and protective devices do not prevent armed robberies. The presence of armed guards would not have prevented the criminal in this case from either seizing the deceased and using him as a hostage or putting the gun to his head. Apparently nothing would have prevented the injury to the decedent except a complete acquiescence in the robber's demand,

and whether acquiescence would have spared the decedent is, at best, speculative. We must also note that the demand of the criminal in this case was to give him the money or open the door. A compliance with this alternate demand would have, in turn, exposed the defendant Murphy to danger of bodily harm.

If a duty is imposed on the Currency Exchange to comply with such a demand the same would only inure to the benefit of the criminal without affording the desired degree of assurance that compliance with the demand will reduce the risk to the invitee. In fact, the consequence of such a holding may well be to encourage the use of hostages for such purposes, thereby generally increasing the risk to invitees upon business premises. If a duty to comply exists, the occupier of the premises would have little choice in determining whether to comply with the criminal demand and surrender the money or to refuse the demand and be held liable in a civil action for damages brought by or on behalf of the hostage. The existence of this dilemma and knowledge of it by those who are disposed to commit such crimes will only grant to them additional leverage to enforce their criminal demands. The only persons who will clearly benefit from the imposition of such a duty are the criminals. In this particular case the result may appear to be harsh and unjust, but, for the protection of future business invitees, we cannot afford to extend to the criminal another weapon in his arsenal.

For these reasons we hold that the defendants did not owe to the invitee Boyd a duty to comply with the demand of the criminal.

Accordingly, the judgment of the appellate court will be reversed, and the judgment of the circuit court of Cook County will be affirmed. .

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. The majority opinion fails to take into account the principles of law clearly enunciated in Restatement (Second) of Torts, secs. 302B and 449, and on the basis of pure conjecture concludes that nothing that defendant's employee could have done would have saved the deceased from death or injury. The majority's polemic on the subject of the hazards which would be created by an application of established legal principles to this case finds little support in logic and none whatsoever in the legal authorities.

This case comes to us only on the pleadings and I agree with the appellate court that "Whether what defendants did or did not do proximately caused the injury that befell plaintiff's decedent, whether Blanche Murphy had the time so she could, under the circumstances alleged, exercise the kind of judgment expected of a person of ordinary prudence, were questions of fact which, from all the evidence, must be decided by a trier of the facts, judge or jury." I would affirm the judgment of the appellate court.